UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| EXPERT JANITORIAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:09-CV-283 |
| | ) (VARLAN/GUYTON) |
| V. | ) |
| | ) |
| HELEN WILLIAMS and | ) |
| KELLY TYER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and the orders of the District Court [Docs. 43 and 46] referring Plaintiff's Motion to Compel Defendants to Respond to Discovery [Doc. 40] and Defendant Helen Williams's Motion for Protective Order [Doc. 44] to this Court for disposition. The parties presented at a hearing on July 1, 2010. Attorneys John E. Pueschel and Celeste Huffman Herbert were present representing the Plaintiff. Attorneys David M. Eldridge and Tasha C. Blakney were present representing the Defendants.

**I.  BACKGROUND**

Plaintiff Expert Janitorial ("Expert") provides janitorial contract services to large retail customers throughout the United States. In September 2007, Expert purchased the assets of Janitorial Maintenance and Supply, LLC, ("JMS"), a company that also provided janitorial contract services throughout the United States. Clint Williams ("Mr. Williams") was JMS's indirect majority

owner, and after the purchase he served as Chief Executive Officer and later Vice Chairman of Expert. [Doc. 1 at ¶¶ 7-10].

Both of the Defendants are related to Mr. Williams. Defendant Williams is married to Mr. Williams, and Defendant Williams is Defendant Tyer's mother. Both Defendant Williams and Defendant Tyer worked for Expert– Defendant Tyer as a regional manager and Defendant Williams as Vice President of Administration. Defendant Williams left her position and held short-term consulting positions with Expert, but her affiliation with Expert is alleged to have ended on September 15, 2008. [Doc. 1 at ¶ 16]. Expert terminated Defendant Tyer on or about March 31, 2009. [Doc. 1 at ¶ 14].

Expert alleges that prior to leaving, Defendant Williams learned the email username and passwords of several Expert employees, including executives, and that during and after the employment, Defendant Williams and Defendant Tyer intercepted, copied, stored, and disclosed confidential emails sent from and to Expert's email accounts. [Doc. 1 at ¶ 19]. The Plaintiff alleges that during and after these activities, the Defendants took steps to conceal their wrongful conduct. [Doc. 1 at ¶ 23].

Based upon these allegations, the Plaintiffs filed this suit on June 26, 2009. The Plaintiffs allege: civil violation of the Federal Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701, *et seq.*; violation of the Tennessee Personal and Commercial Computer Act, § 39-14-601, *et seq.*; violation of the Tennessee Wiretap Act, § 39-13-601, *et seq.*; violation of the Federal Wiretap Act, 18 U.S.C. § 2511, *et seq.*; violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; civil conspiracy; and breach of contract (as to Defendant Tyer). [Doc. 1 at ¶¶ 36-63]. The Defendants have asserted their privilege against self-incrimination in response to the allegations of

wrong-doing, and thus, they neither admit nor deny the allegations against them. [See Docs. 35 and 36].

A Scheduling Order [Doc. 31] entered January 27, 2010, set this case for trial on October 25, 2010, and ordered that all discovery be completed ninety days before trial.

## II. ANALYSIS

The motions now before the Court request different relief, but both motions address invoking the privilege against self-incrimination provided for in the Fifth Amendment to the United States Constitution, in response to discovery in this matter.

### A. The Right Against Self-Incrimination

The Fifth Amendment to the United States Constitution provides that a person shall not be compelled to witness against himself. U.S. Const. amend. V. This right against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar v. United States, 406 U.S. 441, 444-45 (1980). "In order to properly invoke the privilege, one must demonstrate real dangers of incrimination." Brennan v. Comm'r, 752 F.2d 187, 189 (6th Cir. 1984) (citing Zicarelli v. New Jersey State Comm'r of Investigation, 406 U.S. 472, 478 (1972)). The prospect of criminal prosecution must not be "merely trifling or imaginary." Marchetti v. United States, 390 U.S. 39, 58 (1968). "A witness must . . . show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution. In re Morganroth, 718 F.2d 161, 167 (6th Cir. 1983).

3

A "blanket assertion of the privilege . . . is not sufficient . . . . The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify." Id. The privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." United States v. Grable, 98 F.3d 251, 256 (6th Cir. 1996) (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)); see also United States v. Hatchett, 862 F.2d 1249 (6th Cir. 1988) (finding that, although a grand jury had already convened to consider the defendant's tax crimes, it was "not self-evident that every disclosure of a disposition of appellant's assets would form a link in the chain of evidence of some crime").

Further, the term 'blanket assertion' is not limited to the situation where the defendant makes a single response to numerous questions. See Capitol Products Corp. v. Hernon, 457 F.2d 541, 542 (8th. Cir. 1972) (characterizing a refusal to answer any of the 105 questions posed at a deposition as a 'blanket assertion').

**B.      Plaintiff's Motion to Compel Defendants to Respond to Discovery**

In the Motion to Compel, Expert states that on March 8, 2010, it served various written discovery on the Defendants, [Docs. 40-1 and 40-2]. Expert received responses from the Defendants on April 13, 2010, [Doc. 40-3], which it states "refused to answer virtually every single Interrogatory and every single Document Request." Expert maintains that the Defendants' invocation of their right against self incrimination is not appropriate because the Defendants have not demonstrated a real threat of prosecution and have made a broad, indiscriminate invocation of the privilege. Similarly, Expert argues that the Defendants have refused to provide any information as part of their Rule

4

26(a)(1) disclosures and have, instead, invoked their privilege against self-incrimination. Expert requests that the Court compel responses to the written discovery and disclosures or compel an in camera review of the documents and information that the Defendants claim are privileged.

The Defendants oppose Expert's request. Defendants maintain that Expert is "seeking information to be used in the prosecution" of illegal access to private information and files. [Doc. 48 at 1]. The Defendants maintain that, because many of the statutes under which Expert claims civil liability also involve the possibility of criminal prosecution, the evidence provides essential elements of a criminal prosecution. [Doc. 48 at 5]. The Defendants maintain that producing the requested documents would constitute an incriminating response that is protected by the Fifth Amendment. The Defendants concede that they do not know whether there is an on-going state or federal criminal investigation into the alleged conduct, but they maintain that the lack of an investigation is not determinative on the issue. [Doc. 48 at 6].

The Defendants argue that they have not made a blanket invocation of their right against self-incrimination, stating instead that "the necessity of asserting the Fifth Amendment privilege is clear as to each interrogatory and request for production of documents." [Doc. 48 at 8]. The Defendants also provide a list of three classes of requests and how each class of request for information or documents pose a threat of incrimination.

Thus, the Court must determine: first, if the Defendants are subject to a reasonable threat of prosecution, and if so, whether the Defendants have made a blanket invocation of their right against self-incrimination.

Initially, the Court finds that Defendants have demonstrated only a remote or speculative possibility of prosecution for the actions that are at issue in this case. The Defendants have not

5

directed the Court to any cases which hold that statutes which supply both criminal and civil liability, by their very nature, implicate a real threat of prosecution. The Defendants argue that it is impossible to separate proof of civil liability from criminal liability where statutes serve this dual purpose. On that basis alone, the Defendants maintain that a "'substantial and real' fear of criminal prosecution has been demonstrated." [Doc. 48 at 7].

The Court disagrees. As the United States Supreme Court has explained, a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." Hoffman, 341 U.S. at 486. The Defendants have not directed the Court to any investigation into the Defendants' actions undertaken by law enforcement. It has been almost a year and a half since the latest of the alleged actions took place, and the Defendants have not been contacted by any law enforcement agency. The Defendants' position simply is that a prosecutor *could* rely upon some of the evidence gathered in this case. The Court finds that this speculation does not support a finding of a real danger of prosecution.

Even if there were a real threat of criminal prosecution in this case, the Court finds that the Defendants have made an overly broad assertion of their right against self-incrimination. For example, an interrogatory that asks a party to identify every telephone or smart phone they have owned over the last three years does not implicate the right against self-incrimination, [see Doc. 40-4]. The Defendants attempt to analogize the instant case to cases in which witnesses were asked to produce records, which contravened prior tax returns that they had filed with the Government, but owning a phone does not controvert prior statements to the Government nor does it constitute an illegal act.

6

The Defendants have invoked the privilege against self-incrimination in refusing to answer similarly innocuous requests and interrogatories and in refusing to make initial disclosures, and each of these invocations is substantively identical. An invocation of the right against self-incrimination as the response to each discovery request is a blanket assertion, and because it does not specify or particularize a threat of incrimination, it cannot support a claim of the Fifth Amendment privilege.

Thus, because the Defendants have both failed to identify a real threat of prosecution and failed to make specific invocations of their right against self-incrimination, the Court finds that Expert's Motion to Compel is well-taken, and it will be **GRANTED**. The Defendants shall comply with their discovery obligations by making initial disclosures and responding to written discovery on or before **August 12, 2010**. The Court will not order in camera review of the Defendants responses at this time, but if the threat of prosecution changes prior to production, the Defendants may move for in camera review of specific documents and answers which may be incriminating.

**C.     Defendant Helen Williams's Motion for Protective Order**

The second motion before the Court addresses related concerns. Expert has served a subpoena *duces tecum* [Doc. 44-1] upon HM Williams Consulting, LLC, a non-party, whose sole member/manager is Defendant Williams. Defendant Williams maintains that HM Williams producing the requested discovery, would prejudice and violate Defendant Williams's right against self-incrimination. [Doc. 44 at 2]. In support of this invocation, Defendant Williams states that "the business dealings of [HM Williams] are inseparable from Helen Williams'[s] individual identity[;] Helen Williams is HM Williams . . . ." [Doc. 45 at 5].

Expert has responded in opposition to the Motion for Protective Order. Expert objects that HM Williams has made no appearance in this case, and Defendant Williams has improperly moved

on behalf of the entity. [Doc. 47 at 1-2]. Expert argues that a records custodian is not shielded by the Fifth Amendment and, moreover, the "collective entity rule" undermines any attempt by Defendant Williams to impute her own personal rights to the corporate entity that she has formed. [Doc. 47 at 4-5].

As the Supreme Court of the United States in <u>Bellis v. United States</u>, 417 U.S. 85 (1974), explained, "the Fifth Amendment privilege is a purely personal one," which cannot be exercised on behalf of collective entities. <u>Id</u>. at 90. Moreover, an individual who holds records in a representative capacity cannot rely upon the privilege against self-incrimination to avoid producing the records of the collective entity. <u>Braswell v. United States</u>, 487 U.S. 99, 109 (1988). However, the Court in <u>Braswell</u> left the question of whether the Fifth Amendment privilege applies to production of business records when a corporation, which would generally be a collective entity, has only a single member or employee who also serves as the sole officer. <u>Id.</u> at 118 n. 11.

The Supreme Court has not answered the question it left open in <u>Braswell</u>, nor has the Court of Appeals for the Sixth Circuit opined on this issue. In the absence of binding authority, Expert has cited the Court to <u>United States v. Lu</u>, 248 Fed. App'x 806 (9th Cir. 2007). While <u>Lu</u> is not binding authority in this Circuit, the Court finds the decision to be well-reasoned and finds that the same reasoning is applicable in the instant case.

In <u>Lu</u>, the defendant moved to quash a subpoena served upon LLCs, in which the defendant was the only member, based upon the Fifth Amendment privilege against self-incrimination. <u>Id.</u> at 807. The defendant contended that the single-member LLCs at issue were not collective entities and were, instead, more analogous to sole proprietorships, which may invoke the Fifth Amendment privilege. The court in <u>Lu</u> refused to endorse this analogy and instead found:

8

> [the defendant] intentionally took advantage of the corporate characteristics of the LLC structure to obtain asset-protection advantages. In this situation, [the defendant's] business documents are not personal to her because she clearly intended the businesses to be separate from her in the event of a lawsuit. Having chosen to organize her businesses as LLCs and obtain the benefits of that business structure, [the defendant] cannot now disregard the creation of these separate entities to obtain Fifth Amendment protection for her companies' records.

Id. at 808.

The Court finds that the instant case presents a similar attempt at having the best of both business forms. Defendant Williams chose to organize her business as an LLC. The LLC is a business entity created to provide tax benefits akin to a partnership with limited liability akin to the corporate form. Olmstead v. F.T.C., ___ So.3d ___, 2010 WL 2518106 (Fla. 2010); see also Elf Altochem North Am., Inc. v. Jaffari, 727 A.2d 286, 287 (Del. 1998). The LLC insulates its members from liability, see Fla. Stat. Ann. § 608.4227(1) ("[T]he members, managers, and managing members of a limited liability company are not liable, solely by reason of being a member or serving as a manager or managing member . . . ."), which makes it highly appealing to persons organizing business entities. In contrast, a sole proprietorship exposes its lone member to any liability the business may incur.

As the court in Lu explained, the member or manager organizing a business entity must select a business entity and, thereafter, be subject to the legal characteristics of that entity. Defendant Williams has made her decision; she chose to limit her liability by organizing an LLC. She cannot now disregard the creation of this entity, separate and apart from her personal identity and rights, in order to avoid discovery in this lawsuit.

Accordingly, the Court finds that the business records requested in subpoena *duces tecum* [Doc. 44-1] are not protected by the right against self-incrimination provided for in the Fifth Amendment because they are the records of a collective entity. Thus, the Court finds that the Motion for Protective Order **[Doc. 44]** is not well-taken, and it will be **DENIED**.

## III. CONCLUSION

Plaintiff's Motion to Compel Defendants to Respond to Discovery **[Doc. 40]** is **GRANTED**, and Defendant Helen Williams's Motion for Protective Order **[Doc. 44]** is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge