UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

EXPERT JANITORIAL, LLC, )
)
    Plaintiff, )
)
v. ) No.: 3:09-CV-283
) (VARLAN/GUYTON)
HELEN WILLIAMS and KELLY TYER, )
)
    Defendants. )

**MEMORANDUM AND ORDER**

This civil action is before the Court on the objections of defendants Helen Williams and Kelly Tyer [Doc. 53] to Magistrate Judge H. Bruce Guyton's Memorandum and Order (the "M&O") [Doc. 52], granting plaintiff Expert Janitorial, LLC's motion to compel [Doc. 40] and denying defendant Helen Williams's motion for protective order [Doc. 44]. Plaintiff has filed a response to defendants' objections [Doc. 54], and defendants have filed a reply [Doc. 55]. The Court has carefully reviewed the M&O, defendants' objections, the parties' briefs pertaining to the objections, and the underlying pleadings, all in light of the relevant law. For the reasons stated herein, defendants' objections will be overruled and the rulings of the magistrate judge will be affirmed.

**I.    Analysis**

In the M&O, Magistrate Judge Guyton addressed plaintiff's motion to compel [Doc. 40] and defendant Helen Williams's motion for protective order [Doc. 44]. In regard to plaintiff's motion to compel, Judge Guyton granted the motion and ordered defendants to

provide initial disclosures and respond to plaintiff's discovery requests because he concluded that the Fifth Amendment privilege against self-incrimination did not operate to prevent the discovery sought by plaintiff. In regard to defendant Helen Williams's motion for protective order, Judge Guyton denied the motion, concluding that the business records requested in plaintiff's subpoena *duces tecum* and served on non-party HM Williams Consulting, LLC, whose sole member/manager is defendant Helen Williams, were not protected by the right against self-incrimination because the records requested were those of a collective entity.

Defendants' objections pertain to the portion of the M&O granting plaintiff's motion to compel.[1] Defendants object to Judge Guyton's conclusions that defendants failed to identify a real threat of prosecution and failed to make sufficiently specific invocations of their right against self-incrimination. Defendants argue that, contrary to the conclusions of the magistrate judge, they have satisfied their responsibility of laying specific foundations for the assertion of the privilege against self-incrimination. Defendants then request that this Court set aside the conclusion of the magistrate judge and enter an order denying plaintiff's motion to compel. In response, plaintiff asserts that the magistrate judge appropriately found that defendants were not subject to any real and substantial threat of prosecution and that defendants had improperly, and in a blanket manner, asserted the privilege against self-incrimination.

---

[1] Defendants have not objected to the portion of the M&O denying defendant Helen Williams's motion for a protective order.

## II. Standard of Review

The M&O in this case involves non-dispositive discovery issues. A district court must modify or set aside an order of a magistrate judge on a non-dispositive matter if a party objects and the district court finds that the order is clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1). Accordingly, the Court has reviewed the M&O with respect to the specific objections raised by defendants and carefully considered whether the rulings contained therein are clearly erroneous or contrary to law.

### A. Threat of Prosecution

In order to properly invoke the privilege against self-incrimination, a party must demonstrate a real danger of incrimination. *Brennan v. Comm'r*, 752 F.2d 187, 189 (6th Cir. 1984) (citing *Zicarelli v. New Jersey State Comm'r of Investigation*, 406 U.S. 472, 478 (1972)). The prospect of criminal prosecution cannot be "merely trifling or imaginary," *Marchetti v. United States*, 390 U.S. 39, 54 (1968), and "[a] witness must . . . show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution. *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). As stated by the United States Court of Appeals for the Sixth Circuit:

> A witness presents sufficient evidence to establish a foundation for the assertion of the privilege and shows a real danger of prosecution if it is not perfectly clear to the court "from a careful consideration of all of the circumstances in the case, that a witness is mistaken, and that the answer[s] cannot possibly have such a tendency to incriminate." [*Hoffman v. United States*, 341 U.S. 479, 488 (1951)]. Stated differently, sufficient evidence is presented by a witness if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution.

*Morganroth*, 718 F.2d at 169. The Sixth Circuit went on to describe this showing as:

> Short of uttering statements or supplying evidence that would be incriminating, a witness must supply personal statements under oath or provide evidence with respect to each question propounded to him to indicate the nature of the criminal charge which provides the basis for his fear of prosecution and, if necessary to complement non-testimonial evidence, personal statement under oath to meet the standard for establishing reasonable case to fear prosecution under this charge.

*Id.* at 169-70.

In the M&O, Magistrate Judge Guyton concluded that defendants had demonstrated only a remote or speculative possibility of prosecution which did not rise to the level of a real threat of criminal prosecution. Defendants argue that this conclusion ignores the guidelines articulated by the Sixth Circuit in *Morganroth*. Defendants assert that the magistrate judge's determination of this issue was improper because the magistrate judge dismissed defendant's request for constitutional protection solely because the existence of a criminal investigation is unknown. Defendants argue that the complaint contains allegations that defendants' conduct constitutes both civil and criminal violations of law and the discovery sought by plaintiff would compel defendants to provide direct evidence against themselves, as well as evidence that could be used to incriminate them.[2]

---

[2] In the complaint, plaintiff alleges violations of the Federal Stored Wire and Electronic Communications Act, 18 U.S.C. §§ 2701, *et seq.*; the Tennessee Personal and Commercial Computer Act, Tenn. Code Ann. §§ 39-14-601, *et seq.*; the Tennessee Wiretap Act, Tenn. Code Ann. §§ 39-13-601, *et seq.*; the Federal Wiretap Act, 18 U.S.C. §§ 2511, *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.*; civil conspiracy; and breach of contract as to defendant Kelly Tyer [*see* Doc. 1, ¶¶ 36-63].

The Court disagrees. Judge Guyton based his conclusion that defendants had only demonstrated a speculative possibility of criminal prosecution on not only the absence of any known criminal investigation, but also because defendants have not shown that the very nature of the statutes defendants are alleged by plaintiff to have violated, statutes supplying both criminal and civil liability, implicate a real threat of prosecution [*see* Doc. 52, pp. 5-6]. Defendants have not shown, beyond reference to the allegations in the complaint for violations of certain statutes and the criminal liability that could potentially result from those violations, any other "sufficient evidence" from the circumstances of this case upon which the Court could reasonably infer or make use of its "judicial imagination" to conceive of a sound basis upon which defendants have a reason to fear criminal prosecution.

Moreover, the Court finds the facts of *United States v. Grable*, 98 F.3d 251 (6th Cir. 1996) and *United States v. Buaiz*, No. 3:07-cv-83, 2008 WL 5050102 (E.D.Tenn. Nov. 20, 2008), cases cited by defendants in support of their objections, to be distinguishable from the facts of this case in regard to whether the defendants in this case have demonstrated a real danger of prosecution. Both *Grable* and *Buaiz* involved civil investigations by the government into non-payment of taxes by the defendants. *Grable* involved a civil tax investigation by the government into the defendant's failure to file federal income tax returns for a period of two years. *Grable*, 98 F.3d at 252-53. The court in *Grable* noted that there was no present criminal proceeding pertaining to the defendant's failure to file his income tax returns, the IRS had not referred the matter to the Department of Justice, and failure to file an income tax return may constitute a crime. *Id.* at 255. The court then concluded that

5

"the prospect of a criminal prosecution and punishment [in this case] appears to have been real and substantial[.]" *Id.* at 255. *Buaiz* also involved a civil tax action brought by the government against the defendants for non-payment of federal income taxes. *Buaiz*, 2008 WL 5050102, at \*1-\*2. The *Buaiz* court noted, referencing *Grable*, that "[w]hile the Government is currently only seeking to enforce a civil judgment against Defendants' and their real property, there is a substantial threat that the Government will pursue criminal charges against the Defendants for their failure to file or properly complete tax returns." *Id.* at \*2-\*3.

This case, on the other hand, is a lawsuit between private litigants and a case in which the government has not been alleged to have played any role thus far. To the Court's knowledge, this case has also not elicited any notice by either state or federal law enforcement. Moreover, if the mere request for discovery in a case involving allegations of civil violations of certain statutes that also contain criminal liability provisions was all that was necessary to invoke the privilege against self-incrimination, then discovery on such allegations might never be permitted because of the ever-present possibility that a criminal prosecution could, one day, be commenced. More is required for this Court to make a reasonable inference of a real danger of criminal prosecution or use its judicial imagination to conceive of a sound basis for defendants' fear of prosecution. Accordingly, the Court does not find Judge Guyton's conclusion in this regard to be clearly erroneous or contrary to law.

### B. Sufficiently Specific Invocations of Defendants' Right Against Self-Incrimination

The Fifth Amendment privilege against self-incrimination "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Grable*, 98 F.3d at 256 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). However, "blanket assertion[s]" of the privilege are not sufficient and the privilege "must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify." *Morganroth*, 718 F.2d at 167. In the M&O, Magistrate Judge Guyton found that defendants had made substantively identical and overly broad assertions of their right against self-incrimination in response to "similarly innocuous requests and interrogatories and in refusing to make initial disclosures." [Doc. 52, p. 7]. The magistrate judge then concluded that defendants had failed to specify or particularize the asserted threats of self-incrimination and defendants' invocations constituted blanket assertions that cannot support claims of the Fifth Amendment privilege [*Id.*].

Defendants argue that the particular allegations of criminal activity at issue in this case are clear from the face of the complaint and the necessity of asserting the privilege is clear as to each interrogatory and request for production of documents because "[a]cknowledgment of any connection to [plaintiff] in this matter is one of the initial and necessary inquiries that would be part and parcel to an evidentiary link in the chain necessary for the prosecution of

7

[defendants] for criminal violations of the statutes referencd in [the complaint]." [Doc. 53, p. 10]. Defendants also assert that the factual scenarios presented in *United States v. Hatchett*, 862 F.2d 1249 (6th Cir. 1988) and *Buaiz*, cases in which the courts ordered the defendants to provide the courts more specific information to enable the determination of whether the assertions of the privilege were proper, are inapplicable to this case.

Upon the Court's review of defendants' assertions of the privilege[3] the Court does not find the magistrate judge's conclusion in this regard to be clearly erroneous or contrary to law. In *Hatchett*, a case involving review by the Sixth Circuit of what the district court called the defendant's "blanket assertions" of the privilege in response to the government's attempt to obtain and enforce a default judgment for tax assessments, the court observed that it was not "self-evident that every disclosure . . . would form a link in the chain of evidence of some crime" and "[i]t is not readily apparent what earlier transfers would be incriminating. Some–for example gifts–would seem to pose no threat at all. Therefore, appellant must 'seek judicial determination on each claim of privilege' with respect to each specific category or type of transaction he deems incriminatory." *Hatchett*, 862 F.2d at 1251 (quoting *United States v. Schmidt*, 816 F.2d 1477, 1482 (10th Cir. 1987)). Similarly, in *Buaiz*, the case involving nonpayment of income taxes, the court held that more information was necessary because it was unclear how each response could potentially be incriminating or furnish an

---

[3] Defendants' responses are substantively similar, with most stating that "[b]ased upon the advice of my attorney, I respectfully decline to answer this question on the grounds that it might tend to incriminate me in violation of my rights under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution." [*see* Doc. 40-3].

evidentiary link in the chain of prosecution because the defendants' objections did not reference any particular crime or how the expected answer would provide a link in the criminal prosecution. *Buaiz*, 2008 WL 5050102, at *3.

In this case, beyond the fact that the statutes at issue contain provisions giving rise to both civil and criminal liability, the Court cannot discern how plaintiff's discovery requests give rise to the necessity of defendants' assertion of the privilege against self-incrimination. Defendants' assertions of the privilege contain neither a specific reference to a particular crime or how the expected answer would provide a link in any criminal prosecution. As defendants noted, applicable case law states that "[t]he privilege [against self-incrimination] must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify." [Doc. 53, p. 10 (quoting *Buaiz*, 2008 WL 5050102, at *2)]. The Court cannot make a determination of such "propriety" in this case given that the assertions of the privilege are nearly identical "blanket" statements without any explanation as to how defendants' rights would be violated and devoid of any other reference to the particular facts or circumstances of this case. The courts in *Hatchett* and *Buaiz* had no less information than this Court is presented with in this case–allegations of conduct by defendants on the face of a civil action that, if true, could give rise to criminal liability. As noted previously, if all that was required for the privilege to be implicated were allegations that a defendant violated a civil provision of one of the statutes contained in the

complaint in this case, it would seem that no discovery as to any alleged civil violation of these statutes would be possible. Moreover, as the court observed in *Morganroth*, while

> [N]o ritualistic formula or talismanic phrase is necessary to invoke the privilege, . . . a court cannot be asked to scan all of the law for a possible connection between a question and a criminal offense. To impose such a duty on courts in response to a mere assertion of the privilege, without elaboration, in response to seemingly innocent questions devoid of a setting suggestive of producing injurious disclosures would result in a guessing game in which the witness is the final judge of the claim of privilege.

*Morganroth*, 718 F.2d at 170 n.3 (internal citation omitted).

As the magistrate judge observed in the M&O, defendants have refused to answer "innocuous requests and interrogatories" and have not specified any particular threats of incrimination beyond asserting that the requested discovery would establish links and relationships between defendants and plaintiff and reveal central issues to any criminal investigation. This Court agrees that these assertions are overly broad and insufficient invocations of the privilege. Accordingly, the conclusion of the magistrate judge was neither clearly erroneous nor contrary to law.

## III. Conclusion

For the reasons stated above, the Court determines that the conclusions of Magistrate Judge Guyton in the M&O are neither clearly erroneous nor contrary to law. Accordingly,

defendants' objections to the M&O are hereby **OVERRULED** and the M&O is **AFFIRMED** in its entirety.  Plaintiff's motion to compel [Doc. 40] is **GRANTED** and defendant Helen Williams's motion for protective order [Doc. 44] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE